IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Ron Tearia Nicholas, )<br>)<br>                Plaintiff, )<br>)<br>   vs. )<br>)<br>William White; Bernard McKie; and )<br>Lester Hinson, all sued in their )<br>individual and official capacities, )<br>)<br>             Defendants. )<br>                                    ) | Civil Action No. 8:05-1232-RBH-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, Ron T. Nicholas, is a state prisoner proceeding *pro se*. He seeks relief pursuant to Title 42 United States Code §1983. Under the provisions of 28 U.S.C. §636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. §1983 and submit findings and recommendations to the District Court.

**BACKGROUND**

The plaintiff is incarcerated at Kirkland Correctional Institution (KCI) in Columbia, South Carolina, where he is held in the Maximum Security Unit (MSU). On January 15, 2004, a disturbance occurred in the Special Management Unit (SMU) at Broad River Correctional Institution (BRCI), where the plaintiff was previously incarcerated.[1] In his

---

[1] The Maximum Security Unit (MSU) is described as a "special housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of a Special Management Unit, who have been charged with violent criminal behavior committed while in the general population, and/or for whom emergency placement has been ordered by the Agency Director or the Division Director of Operations." *See SCDC Policy/Procedure OP-22.11 ("Maximum Security Unit")*. The Special Management Unit, described in *SCDC Policy/Procedure OP-22.12 ("Special Management Unit")*. is used for wider categories of inmates. Thus, the incident occurring at the BRCI/SMU on January 15, 2004, resulted in transfers to the KCI/MSU.

original Complaint, the plaintiff alleged that he was transferred to KCI/MSU as a result of this incident:

> (1)   Plaintiff was accused of assaulting a correctional employee, hostage taking, riot and inciting/creating a disturbance, all which stemmed from an incident occuring [sic] on January 15th 04 at the Broad River C.I.
>
> (2)   Subsequent to these set [sic] of events, Plaintiff was transferred to an administrative segregation unit at the Kirkland C.I. Maximum Security Unit (MSU).
>
> (3)   Plaintiff submits that he was denied two aspects of his fundamental rights to due process.
>
> (4)   Plaintiff first contends he was never served a notice for a review hearing which is a form advising an inmate of the alleged charges against him and a set date for an administrative hearing to contest the charges and present his views as to why he should not be placed in administrative segregation.
>
> (5)   Plaintiff submits SCDC is very specific in its policy and procedures regarding the requirements for admittance to the maximum security unit.  Essentially, the policy entitles all inmates to a review hearing prior to their placement in administrative segregation.  The expressed purpose of the policy is to ensure due process is afforded to the inmates.  More specifically, by giving him the opportunity to plead his case in defense of any misconduct of wrongdoing allegedly committed.  Normally the case is plead before a review committee who then makes an independent assessment of the "then"available evidence against the inmate to determine whether such evidence warrants placement in administrative segregation at the (MSU)  This hearing was supposed to be coordinated by defendants White and McKie. Plaintiff submits it never was...
>
> (6)   Denial of Due Process II
>
> (7)   On February 10th 04 Plaintiff was taken before a disciplinary Hearing Committee chaired by defendant Hinson on the charges of 1.03 Assault, 1.08 Riot, 1.11 Hostage Taking, and 2.12 Inciting/Creating a Disturbance.
>
> (8)   Plaintiff submits the 1.03 Assault charge was dismissed at the hearing for lack of evidence, and subsequently on his appeal on the remaining charges to which he was convicted,

2

>plaintiff also succeeded in getting the charge of 1.11 hostage taking dismissed for lack of sufficient evidence.
>
>(9)    Plaintiff submits the charges of 11.08 Riot and 2.12 Inciting were upheld. Consequently, he was sentenced to an indeterminate time in punitive segregation which at the minimum is 18 months.
>
>(10)   He contends the defendants violated his due process by convicting on those charges without any evidence in support.
>
>(11)   He submits their [sic] were no witnesses that testified at his hearing, but their [sic] were only written reports by correctional employees.
>
>(12)   Plaintiff contends those reports were facially devoid of any credible evidence by which to implicate him in the Jan 15th 04 disturbance given [sic] rise to these charges
>
>(13)   He contends their [sic] was nothing in any of those reports to support the conclusion that he spoke to or communicated with any other inmates in any fashion, intended to incite them or partake in the disturbance. Thus in the absence of any evidence, the conviction for the charges of 1.08 Riot and 2.12 Inciting denied due process to Plaintiff, rendering his current detainment in punitive segregation unconstitutional.

(Complaint at 3-4). In his statement of relief sought, the plaintiff states:

>A.    Plaintiff seeks compensatory damages (unspecified) against all 3 defendants for the punishment and injury sustained as a result of the denial of due process in connection with his administrative and disciplinary hearing.
>
>B.    Plaintiff seeks [punitive damages(unspecified) against all 3 defendants for their callous indifference and reckless disregard of his constitutional right to due process.
>
>C.    Plaintiff seeks an injunction ordering the defendants do immediately release him from punitive segregation.

(Complaint at 5).

On February 6, 2004, Defendant White, BRCI Warden, formally recommended MSU placement of the plaintiff under procedures discussed below (Sligh aff., ex. B at 38). The MSU referral packet was sent, and the MSU Review Board met on

3

February 10, 2004 (Sligh aff. at ¶ 7; ex. B at 31). MSU placement of the plaintiff was approved by the Board and the concurrence of Robert Ward, Deputy Director for Operations, was obtained (Ex. B at 29). On February 11, 2004, the results of this process were officially communicated to the plaintiff (Ex. B at 30).

Parallel with the MSU proceedings, the plaintiff was notified on February 3, 2004, that he was charged with four major disciplinary violations: Inciting/Creating a Disturbance (2.12); Hostage Taking (1.11); Riot (1.08); and Striking an Employee With or Without a Weapon (1.03). On February 10, 2004, the plaintiff appeared before a Disciplinary Hearing Officer (DHO), Defendant Hinson. The plaintiff was found guilty of three violations, but DHO Hinson found that the plaintiff was not guilty of striking an employee (1.03) (pl. motion for temp. restraining order, docket entry 15-4 at 12). On February 19, 2004, the plaintiff filed an appeal from the DHO finding (Step One grievance, MSU-00-36-0-4) (Sligh aff., Ex. D at 48-52). His appeal was denied on February 25, 2004, and the plaintiff filed a Step Two appeal on March 4, 2004 (Sligh aff., Ex. E at 55). On review, SCDC determined that the hostage-taking charge (1.11) was not supported by substantial evidence (Sligh aff. at 3-4). The plaintiff's appeal to the South Carolina Administrative Law Court (ALC) was dismissed in September 2004 on the grounds that ALC lacked jurisdiction because under South Carolina case law at the time the plaintiff's claim did not involve a state-created liberty interest (Sligh aff., Ex E at 56-57).

### *PRO SE* **COMPLAINT**

The plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F. 2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe, supra*. Even under

4

this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. Liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him or her. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## **PROCEDURAL HISTORY**

Under *Houston v. Lack*, 487 U.S. 266 (1988), this action commenced on April 21, 2005. The plaintiff's action is subject to mandatory screening under 28 U.S.C. § 1915A. On April 29, 2005, the undersigned filed an order directing the plaintiff to respond to Special Interrogatories. The questions sought to clarify the plaintiff's factual allegations concerning: (1) his transfer to KCI/MSU; and (2) the disciplinary proceedings. The plaintiff filed his answers on May 24, 2005. Question (1) specifically asked if the plaintiff contended that his transfer to KCI/MSU came about with no notice or paperwork whatsoever. The plaintiff responded that he made no such claim. Question (3) directed the plaintiff to supply such documentation as he might have received. The plaintiff failed to do so. Instead he referred the Court to an attached memorandum. The memorandum itself cast no light on the KCI/MSU transfer. It merely alleged that investigations of the riot on January 15, 2004, and incident reports had failed to implicate him in the matter. Thus, the plaintiff's answers left this court in the dark concerning his KCI/MSU transfer. They also failed to provide details about alleged denials of due process in the disciplinary proceeding. The plaintiff merely reiterated his attacks on the substance of the DHO decision.

The undersigned, therefore, authorized service of this action upon the defendants. The defendants filed an answer and, on October 21, 2005, a motion for

5

summary judgment. By order filed on October 24, 2005, pursuant to *Roseboro v. Garrison*, 528 F2d. 309 (4th Cir. 1975), the plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The parties have filed nine (9) subsequent pleadings or motions, including affidavits, copies of SCDC policies, and voluminous memoranda. This matter is ready for disposition.

## DISCUSSION

### MOTION FOR SUMMARY JUDGMENT

The defendants' motion is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> ...the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex*, at 323; Rule 56(c), Federal Rules of Civil Procedure (Fed. R. Civ. P).

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Company*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Maryland Medical System Corporation*, 855 F. 2d 167 (4th Cir. 1988).

The parties' filings essentially present two sets of issues to be determined. The first inquiry concerns the plaintiff's transfer to MSU on January 15, 2004. The second inquiry involves prison disciplinary charges and proceedings against the plaintiff following the BRCI disturbance on January 15, 2004. The defendants contend that the plaintiff did not exhaust administrative remedies before bringing this action. As discussed below, the

6

record leaves no doubt that the plaintiff has bypassed available administrative remedies. Summary judgment should be granted to the defendants.

### TRANSFER FROM BRCI/SMU TO KCI/MSU

SCDC Policy/Procedure OP-22.11 ("Maximum Security Unit") governs transfer of inmates to MSU. Paragraph Three describes a procedure whereby the inmate is provided a minimum of forty-eight hours advance notice of a referral to MSU and an opportunity to respond at a hearing, recorded either in writing or by audio tape. *See* ¶ 3.1. The MSU referral packet (including the hearing documentation) is then forwarded to the MSU Review Board which may approve MSU placement by a majority vote within twenty (20) working days from a Warden request. *See* ¶¶ 3.2 - 3.4. Thereafter, a Division Director of Operations reviews the packet within twenty (20) working days. *See* ¶ 3.5. He or she may approve or disapprove the MSU Review Board finding. *See* ¶ 3.6.

The Paragraph Three procedure was not followed in the plaintiff's case, because he was placed in MSU under the "Emergency Admission" provisions of Paragraph Four. This procedure allows immediate MSU placement and postponement of the ¶ 3.1 hearing for a period up to seven (7) working days. After the hearing, all phases of the Paragraph Three procedure are expedited. An inmate may appeal his MSU placement (or denial of release) directly to the SCDC Director within ten (10) working days under Paragraph Five *See* ¶ 5.2. Inmates placed in MSU retain all general grievance rights enjoyed by other inmates under the first section of Paragraph Five. The actual MSU transfer, however, cannot be appealed through the regular grievance procedure. *See* ¶ 5.1.

The record establishes that the plaintiff was not provided the post-transfer notice or hearing contemplated by Paragraph Four of OP-22.11. The plaintiff has maintained throughout this action that the failure to provide post-transfer notice or hearing violated his right to due process. The defendants argue that the plaintiff's subsequent

7

disciplinary proceeding sufficiently apprised him of the reasons for his MSU transfer, thereby substantially complying with *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005). For his part, the plaintiff steadfastly contends that the omission of post-transfer notice and hearing establishes a *per se* violation of *Wilkinson,* thereby entitling him to the relief demanded in his complaint.

As noted above, OP-22.11 provides for an inmate to appeal MSU placement to the SCDC Director in Paragraph 5.2. The record reveals that the plaintiff did not file such an appeal.[2] He contends that his direct appeal was hindered by the defendants themselves.[3] His vague allegations are not persuasive. The plaintiff was transferred to KCI/MSU on January 15, 2004. He did not appeal to the SCDC Director within ten (10) working days – that is, by January 29, 2004. The period for the post-transfer notice and hearing expired on January 26, 2004. Even if the plaintiff's failure to appeal immediately following his MSU transfer were excused by this Court, his failure to seek relief within ten days after denial of a post-transfer hearing – that is, by February 9, 2004 – is nowhere explained in this record. Conceivably, the plaintiff could have filed an appeal to the SCDC Director within ten (10) working days from the date he received notice that the MSU Review Board had approved his MSU placement – that is, by February 24, 2004 – or at the latest within ten days after the Deputy Director for Operations, Robert Ward, approved the placement – that is, by February 25, 2004. In other words, the plaintiff ignored these four opportunities to object to his MSU transfer and/or denial of the post-transfer notice and

---

[2]The defendants suggest that an appeal to the SCDC Director was filed on March 8, 2004. (Def. Reply to pl. resp. to m.s.j. at 2 - 4). The undersigned has been unable to find this document among the plaintiff's voluminous filings. As the defendants point out, such appeal – if filed – was well beyond the time period allowed under OP 22.11 ¶ 5.2.

[3]The plaintiff suggests that he attempted to file a general grievance regarding the MSU transfer on January 29, 2004, adding that the grievance was returned without processing under OP 22.11 ¶ 5.1. OP 22.11 ¶ 5.2 mandates that such grievances not be processed, since the appropriate remedy is appeal to the SCDC Director. The plaintiff also files copies of various grievances filed well outside the time frame for either a general grievance or appeal to the SCDC Director.

hearing. He failed to exhaust available administrative remedies before bringing action in this court in April 2005.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a) provides: "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held this to be a mandatory provision which "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). The plaintiff's attack upon his transfer to KCI/MSU fails.

The plaintiff's depictions of MSU suggest something akin to a "black hole" from which he is unable to rescue himself without this court's intervention. Recourse to this court is available only in cases where the plaintiff has been denied relief which he or she has actually earned. To embrace the plaintiff's view, this court would have to hold that any measures to control or reform inmate behavior are deprivations of a fanciful "liberty interest" in defying and violating legitimate prison rules and regulations with impunity. This court declines to do so.

The undersigned notes that the SCDC regime for MSU provides a procedure whereby an inmate may progress toward release. At the end of eighteen months, an inmate subject to the MSU regime is entitled to a review of his progress and is provided opportunity to return to the SMU upon demonstration of progress. *See* Paragraph 7, OP-22.11. Under ¶ 5.2, an inmate denied release from MSU may appeal to the SCDC Director within ten (10) working days. In other words, at this time, the plaintiff's best avenue to release is successful progress through the MSU regime and/or appeal to the SCDC Director after any subsequent denial(s) of release. There is no reason for this Court to consider the

plaintiff's attack upon his MSU placement without a demonstration that he has exhausted the available administrative remedies described above.

To the extent the plaintiff complains of conditions under which administrative or punitive segregation occurs, the constitutional scrutiny is minimal. *Hewitt v. Helms*, 459 U.S. 460 (1983). In *Wilkinson*, *supra*, the Supreme Court found that conditions in the maximum security Ohio State Peniteniary – and arguably KCI/MSU – constituted atypical and significant hardship for inmates. 125 S.Ct. at 2394. The Court did not, however, declare the "supermax" (or maximum security) regime constitutionally impermissible. Rather it required that the government assure due process before imposing this hardship. *Id*. at 2395. When and if the plaintiff exhausts available administrative remedies, this Court's proper inquiry will focus upon the issue of due process.

**PRISON DISCIPLINARY PROCEEDINGS**

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant(s) deprived him or her of a federal right, and (2) did so under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); and *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999). In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court applied a due process analysis to prison disciplinary proceedings. The Court found that while the "full panoply of rights due a defendant" do not apply to such cases, certain minimal requirements should be met. These include: written notice of the claimed violation; written statement of the evidence relied upon by the hearing officer; reasonable opportunity to call witnesses and present evidence.

The plaintiff acknowledges that he received written notice of the claimed violations and that he was provided hearings. The plaintiff was given opportunity to appeal from the adverse decisions and actually secured relief on two violations through the appeal process. The plaintiff was not denied due process.

Federal courts are cautiously inclined to afford appropriate deference and flexibility to state prison officials managing the volatile prison environment. *Sandin v. Conner*, 515 U.S. 472 (1995). Deference is appropriate in this case, especially since the plaintiff attacks the substantive DHO findings and makes no serious attempt to demonstrate a denial of procedural due process. Even assuming that the defendants erred initially by accusing the plaintiff of certain infractions – striking an employee or hostage-taking – his subsequent vindication through the administrative review process satisfies constitutional requirements and precludes an action under 42 U.S.C. § 1983.

## SECTION 1915 SCREENING

Under 28 U.S.C. § 1915, a district court may dismiss a pleading by an indigent and/or *pro se* litigant upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." § 1915(e)(2)(B)(I), (ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25 (1992). Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995). The court may dismiss a claim as "factually frivolous" under § 1915(e) if the facts are clearly baseless. *Denton v. Hernandez, supra*. In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. *Id.*

## **RECOMMENDATION**

Although the defendants correctly invoke qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), this issue need not be reached given the lack of merit to the claim as a whole. It is therefore recommended that the defendants' motion for summary judgment be granted in its entirety. It is also recommended that a "strike" be imposed upon

11

the plaintiff under 28 U.S.C. § 1915(g) not only because this action fails to state a claim upon which relief may be granted, but also because this action is frivolous and demonstrates a pattern of vexatious litigation.  The plaintiff's motions to compel and motions for injunctive relief and for a stay of summary judgment are held in abeyance pending the district judge's disposition of the motion for summary judgment.  Should the district judge adopt this court's recommendation, these motions will be rendered moot. The plaintiff's attention is directed to the Notice on the following page.

                                              s/  Bruce H. Hendricks
                                              United States Magistrate Judge

May 31, 2006

Greenville, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  See Mathews v. Weber, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *   We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.**  See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603**
