UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ron Tearia Nicholas, | ) | C/A No. 8:05-1232-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| William White; Bernard McKie; and | ) | |
| Lester Hinson, all sued in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff is an inmate of the South Carolina Department of Corrections ("SCDC") currently confined in the Maximum Security Unit (MSU) at Kirkland Correctional Institution and previously confined in the Special Management Unit (SMU) of the Broad River Correctional Institution. Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 alleging deprivation of procedural due process against the defendants in connection with his transfer to the administrative segregation unit at the MSU.

This matter is before the court on the defendant's motion for summary judgment , which was filed October 21, 2005, and the plaintiff's motions to compel, for stay and for temporary injunctive relief. By order filed October 24, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to respond adequately. Plaintiff responded to the motion for summary judgment on November 21, 2005.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 this matter comes

1

before the court with the Report and Recommendation of United States Magistrate Bruce H. Hendricks filed January 8, 2006. This court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

Based on her review of the record, the Magistrate Judge concluded that the defendant's motion for summary judgment should be granted because plaintiff has failed to exhaust his administrative remedies and on the basis that the plaintiff was afforded the procedural protections of the due process clause. The Magistrate Judge advised petitioner of the procedures and requirements for filing objections to the report. Plaintiff filed objections on June 13, 2006.

The Magistrate Judge makes only a recommendation to the Court, to which any party may file written objections. The Court is not bound by the recommendation of the Magistrate Judge but, instead, retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is required to make a *de novo* determination of those portions of the Report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

### Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA") a prisoner is required to exhaust his

administrative remedies before filing a § 1983 action concerning his confinement.  *See* 42 U.S.C. §1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.")  This provision is mandatory, and prisoners must exhaust all available remedies, even those where the relief requested cannot be granted administratively.  *Booth v. Churner*, 532 U.S. 731 (2001).  Exhaustion is also now required in all suits challenging prison conditions, not just suits brought under § 1983.  *Porter v. Nussle*, 534 U.S. 516 (2002).  A prisoner must complete the state administrative review process and meet all applicable deadlines in order to satisfy the requirement of exhaustion of administrative remedies.  "Proper exhaustion" is now required.  *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).

> Respondent argues that requiring proper exhaustion is harsh for prisoners, who generally are untrained in the law and are often poorly educated.  This argument overlooks the informality and relative simplicity of prison grievance systems like California's, as well as the fact that prisoners who litigate in federal court generally proceed *pro se* and are forced to comply with numerous unforgiving deadlines and other procedural requirements.

*Id.*, 126 S. Ct. at 2392.

In the case at bar, the plaintiff was transferred into the MSU on January 15, 2004, after a riot occurred in the SMU at Broad River Correctional Institution.  During the riot, inmates assaulted guards, took hostages, and set fire to mattresses.  Under the applicable policy [OP-22.11(4)], in emergency situations inmates may be confined to MSU for seven working days prior to a hearing.   The inmate is to be given notice as to the reasons why he is being transferred to MSU and given an opportunity to respond at the hearing.  A Referral Packet is prepared which is sent to the chairperson of the MSU Review Board.  The Review Board then makes a recommendation regarding the inmate's placement

3

which is forwarded to the Division Director of Operations which approves or disapproves the decision.

Section 5 of the policy provides that the SCDC grievance procedures are not available for placement

in MSU.  However, Section 5.2 provides as follows:

> Inmates may appeal MSU placement or denial of release from MSU directly to the Agency Director.  **The written appeal must be initiated no later than ten (10) working days (Monday through Friday) after the inmate's admission to MSU.** Specific reasons for the appeal must be given by the inmate.  The Agency Director will respond to this appeal within 30 working days from the date of the appeal.  (Emphasis added)

According to the Affidavit of James Sligh, the Operations Coordinator with the Division of

Operations of the Department of Corrections, the MSU Review Committee met on February 10, 2004

to evaluate the plaintiff's admission to MSU.  The emergency admission was approved, with the

following notation, "pending the outcome of investigation, the committee will review Inmate Nichols

again." The acting director, Robert Ward, also reviewed and concurred in the recommendation of the

committee.  A disciplinary hearing was also held on February 10, 2004 regarding the charges against

the plaintiff of riot, hostage taking, creating a disturbance, and striking an employee. The disciplinary

committee found the plaintiff guilty of all of the above offenses except striking an employee.

The plaintiff filed a grievance on February 25, 2004 (MSU-0036-04) on the basis that he was

allegedly denied procedural due process at the disciplinary hearing on February 10, 2004.  However,

he failed to specify any defects in the notice and hearing that was provided; he merely challenges the

evidence utilized to reach the result.   The grievance was denied on February 25, 2004.  The plaintiff

then filed a Step 2 grievance on March 4, 2004 based on alleged lack of substantial evidence at the

hearing on February 10, 2004 and did not mention a denial of due process.  The responsible official,

Ward,  reversed the conviction for hostage taking but affirmed the other convictions. On July 3, 2004,

4

the plaintiff appealed the grievance under the South Carolina Administrative Procedures Act ("APA"). The Administrative Law Judge (ALJ) dismissed the appeal for lack of jurisdiction under *Al-Shabazz v. State*, 527 S.E.2d 742 (S.C. 1999), on grounds that it did not challenge the manner of calculation of the plaintiff's sentence or his custody status or involve a state-created liberty interest. The plaintiff did not appeal the ALJ's decision to the circuit court or the South Carolina appellate courts.

The plaintiff attaches to his objections a letter dated April 13, 2004 indicating that he attempted to appeal to Director Ozmint on March 8, 2004 and that the appeal was not timely, since it was filed more than ten (10) days after his admission to MSU on January 15, 2004. Plaintiff states that he filed the appeal on March 3, 2004 and that it was received by the Director on March 8, 2004. He contends that his time for appeal under the policy did not begin to run until he was approved for MSU custody on February 10, 2004. However, he states that he should have filed the appeal to the director by February 25, 2004 and that the appeal was thus filed at least eight (8) days late. Nevertheless, he argues that his failure to timely appeal should be excused since he was informed that the matter was still under investigation. This Court disagrees. The department's policy unambiguously provides for a time frame of ten days from the date of admission to MSU for any appeal to the Director and states in section 5.1 that the grievance mechanism is available to MSU inmates, "except for placement in MSU and/or denial of release from MSU". It is therefore clear that the decision to transfer an inmate to MSU is not grievable under the standard grievance process and that, instead, the policy provides for an appeal to the Director in addition to the various referral procedures outlined above. Therefore, under *Woodford*, the plaintiff has not properly exhausted his administrative remedies since he did not file a timely appeal to the Director. The Court finds that the fact the plaintiff was told that the investigation was continuing does not excuse the plaintiff's failure to timely appeal to the director. The plaintiff thus cannot bring

5

a Section 1983 action challenging his placement in SMU.

**Effect of Failure to Hold Hearing on MSU Placement Separate from Disciplinary Proceedings**

The plaintiff next asserts that he was not afforded due process in connection with his transfer to MSU since he was only given a hearing concerning the disciplinary charges that arose from the riot.[1] The plaintiff argues that the disciplinary hearing that he received was not synonymous with the transfer hearing to which he was entitled and that due process was thus violated. It is not necessary to address this argument due to the Court's finding regarding exhaustion. However, as the magistrate judge noted, the plaintiff does not contend that he did not receive written notice of the claimed violations or that he was not provided a hearing. The Court finds that, since the purpose for the disciplinary hearing was to review the infractions arising from the riot, which was the reason the plaintiff was placed in the MSU, the plaintiff was not entitled to another hearing on MSU placement.

"Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed that amount of process otherwise guaranteed by the Constitution. If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by the law is not a federal due process issue." *Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990). In the case at bar, the plaintiff received notice of the charges against him and a hearing; in addition, he filed grievances regarding the disciplinary findings and two charges were actually dropped as a result. The plaintiff was accorded due

---

[1] The Court notes that prison administrators and not the courts should make the difficult decisions concerning institutional operations. "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administrations." *Morrison v. Garraghty*, 239 F.3d 648, 655 (4th Cir. 2001).

6

process.  *See Wolff v. McDonnell*, 418 U.S. 539 (1974).  The plaintiff relies on *Hewitt v. Helms*, 459 U.S. 460 (1983) in connection with his argument that it was necessary to have a separate hearing specifically addressing the transfer to MSU.  However, *Hewitt*'s methodology of determining whether a regulation was mandatory or discretionary was abandoned by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995) (Mandatory language in administrative prison regulation does not afford inmate who was placed in disciplinary confinement a liberty interest that would entitle him to the procedural protections afforded in *Wolff*.)  Under *Sandin*, the nature of the deprivation determines whether a liberty interest is implicated; i.e., whether the restraint imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Gholson v. Murry*, 953 F.Supp. 709, 715 (E.D. Va. 1997), citing *Sandin*.  The plaintiff also argues that *Wilkinson v. Austin*, 545 U.S. 209 (2005) requires a "non-adversary hearing" before being placed in administrative segregation and that the disciplinary hearing that was held did not meet the proper requirements.  *Wilkinson* did hold that a liberty interest was implicated where inmates were transferred to Ohio's supermax prison, under the facts of that case regarding the conditions in the supermax prison.  However, the court held that the state's informal, nonadversary procedures were adequate to protect the liberty interest.  In the case at bar, as in *Wilkinson*, the procedures utilized by the prison afforded the plaintiff due process.

### Due Process Allegations Regarding Disciplinary Hearing

Plaintiff alleges that he was denied due process in the disciplinary hearing since there was allegedly no evidence to support his "conviction" for rioting and creating a disturbance.[2]  He cites the draft of the investigation report dated March 4, 2004 which states that certain other inmates participated

---

[2] No formal criminal charges were filed against the plaintiff.  He is attempting to challenge the internal disciplinary "convictions" insofar as they were used as the basis for the MSU placement.

in the riot but merely states that Nicholas was seen out of his cell.

This argument lacks merit. First, the plaintiff was afforded notice and hearing as required by the due process clause[3]; he merely disagrees with the decision made by the hearing officer. The record contains evidence that the plaintiff was observed outside his cell, in the area of the riot. This would be sufficient to support the decision by the disciplinary board. *See Baker v. Lyles*, 904 F.2d 925 (4th Cir. 1990) (As long as there is some evidence to support the conclusion reached by the administrative board in requiring segregation of prisoner, the court will not independently weigh the evidence.) Secondly, the Court notes that "[a]lthough the Fourteenth Amendment prohibits a state from depriving a defendant of liberty without due process of law, when the defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of his sentence . . . As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991), citing *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

Third, the plaintiff cannot bring a Section 1983 action regarding a disciplinary hearing where the results of the hearing have not been invalidated. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the United States Supreme Court held that *Heck v. Humphrey*, 512 U.S. 477 (1994) applies to challenges to the procedures utilized in institutional hearings. In *Heck*, the Court held that, "in order to recover

---

[3] The plaintiff received notice of the hearing and the charges against him on February 3, 2004. *See* Exhibit C to Affidavit of James Sligh. Under *Wolff*, in a prison disciplinary proceeding, the following requirements are sufficient to satisfy a minimal standard of due process: advance notice of the charges, a written statement citing the evidence on which the hearing officer relied and the reasons for the action taken, and the right to call witnesses and present documentary evidence, if institutional safety is not jeopardized. 418 U.S. at 563-576. The record reflects that these requirements have been met.

damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issueance of a writ of habeas corpus."  In *Kerr v. Orellana*, 969 F. Supp. 357, 358 (E.D. Va. 1997), the court granted a motion to dismiss a section 1983 lawsuit against prison officials on the basis of *Balisok* and *Heck*.  The inmate in *Kerr* claimed that he was denied due process in an institutional hearing because the hearing officer allegedly found him guilty before he had an opportunity to present evidence.  In addition, he alleged that there was insufficient evidence to find him guilty of the infraction. The court found that the case was not cognizable under section 1983 because the plaintiff did not show that the conviction underlying his claims had been invalidated.  *See also*, *Mahotep v. DeLuca*, 3 F.Supp.2d 385, 391 (W.D. N.Y. 1998) ("In accordance with *Edwards* and *Heck* . . . [plaintiff] must assert the challenges concerning his disciplinary hearing 'directly'-*i.e.*, via appeal, habeas corpus petition or other collateral attack.  He may not assert these claims pursuant to §1983 because, to date, the disciplinary hearing 'conviction' has not been invalidated.")

Similarly, in the instant case, the award of damages or injunctive relief to the plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing and thus his claim is barred under *Heck* and *Balisok*.[4]

### Pending Motions

The plaintiff filed a Motion to Compel [14] requesting an order compelling the defendants to

---

[4] The defendants assert that the plaintiff failed to properly exhaust his administrative remedies when he did not appeal the order by the Administrative Law Court.  However, it is not necessary to address this issue.

9

respond to a request for production of documents, request for admissions, and interrogatories. The defendants filed a Memorandum in Opposition to the Motion to Compel [20] which indicates that they have fully responded to the discovery. No Reply was filed by the plaintiff. It thus appears that the plaintiff's motion to compel [14] is now moot since the defendants have responded to the discovery, and the motion to compel is thus **DENIED**.

The plaintiff filed a Motion to Stay [21], requesting that the motion for summary judgment should be stayed pending a ruling on the motion to compel. Now that the motion to compel has been denied, the motion for stay is deemed **MOOT**.

Plaintiff has also filed a Motion for TRO and/or Preliminary Injunction [15], seeking injunctive relief relating to his placement in the SMU. This motion is also **MOOT** since the Court has found that summary judgment should be granted in favor of the defendants and the plaintiff cannot therefore show a likelihood of success on the merits. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997).

### Conclusion

The court has reviewed the Report, objections, pleadings, memoranda, and applicable law. The court overrules all objections, adopts the Report and Recommendation as modified herein, and incorporates it herein by reference. Accordingly, defendant's [18] motion for summary judgment is **GRANTED**. Plaintiff's [14] Motion to Compel is **DENIED.** Plaintiff's [21] Motion to Stay is **MOOT**. Plaintiff's [15] Motion for Temporary Restraining Order/Preliminary Injunction is **MOOT**.

**IT IS SO ORDERED**.

s/R. Bryan Harwell
R. Bryan Harwell
United States District Judge

September 7, 2006
Florence, SC

10